UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| PATRICIA GARRISON, § | |
| § | |
| Plaintiff, § | |
| § | CIVIL ACTION NO. H-11-2368 |
| v. § | |
| § | |
| TEXAS SOUTHERN UNIVERSITY, § | |
| § | |
| Defendant. § | |

**MEMORANDUM AND ORDER**

Plaintiff Patricia Garrison ("Plaintiff" or "Garrison") brings this action against Defendant Texas Southern University ("Defendant" or "TSU") alleging race discrimination and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-1 to e-17. Pending before this Court is Defendant's Motion for Partial Summary Judgment ("Motion") on the issue of race discrimination. (Doc. No. 32). Upon considering the Motion, the responses thereto, and the applicable law, the Court finds that Defendant's Motion must be **DENIED**.

**I.    BACKGROUND**

Garrison is the Assistant Dean of Academic Support at Texas Southern University's Thurgood Marshall School of Law ("Thurgood Marshall"). (Doc. No. 44, *hereinafter* "2nd Amended Complaint" ¶ 5.) She was hired by former dean, McKen Carrington, in 2007, and was tasked with overseeing the operations of the Academic Support Program Department. (*Id.*) Garrison was a recent graduate of Thurgood

1

Marshall, where she was on the Dean's list, won the law school's award for best brief, received five awards for her performance in law school courses, and won three statewide writing awards from the State Bar of Texas. (*Id.*) Garrison also had "decades of experience in the private sector." (*Id.*)

At Thurgood Marshall, Garrison "focused on developing new programs for the law school, such as skills and writing workshops." (*Id.* ¶ 6.) She coordinated the first year tutorial program; taught a bar essay writing course and an essay writing and reading workshop series; and coordinated and taught orientation, summer academic enrichment, and bar exam preparation workshops. (*Id.* ¶ 7.) According to Garrison, her efforts led to an "increase [in] the bar passage rate by over 10 percent in three years' time." (*Id.* ¶ 8.) Garrison also worked closely with faculty and students, extending her office hours to serve students' needs. (*Id.* ¶ 7.) Dean Carrington recognized Garrison's hard work with two positive performance appraisals. (*Id.* ¶ 8.)

In September 2009, Dean Carrington was replaced by Dean Holley. (*Id.*) According to Garrison, Dean Holley "quickly embarked on a campaign to make [Garrison's] life extremely difficult." (*Id.*) Garrison alleges that Dean Holley's campaign against her was based upon Garrison's race. Garrison is white.

Garrison alleges that Dean Holley "micromanage[d] every detail" of her work and "refuse[d] to give her the authority she need[ed] to do the job." (*Id.* ¶ 9.) For example, Garrison was not given a key to access the law school on weekends and holidays, though "other employees of color are provided keys." (*Id.* ¶ 15.) Further, instead of referring to Garrison by her assigned title of Assistant Dean, as he refers to Garrison's colleagues,

Dean Holley has publicly referred to her as "director," which she believes sends a "strong message that he does not value either her or her accomplishments." (*Id.* ¶ 10.)

As a result of Dean Holley's actions, Garrison states that she no longer teaches the bar essay class, was removed from the faculty curriculum committee, no longer controls the bar assistance program, and she is not permitted to send emails directly to the faculty clarifying her employees' working arrangements. (*Id.* ¶ 9.) Garrison also alleges that Dean Holley withheld $5,000 in compensation, which was due to her for teaching a bar essay course in the fall of 2009. (*Id.* ¶ 10.)

Beyond the actions taken directly against her, Garrison alleges that Dean Holley "has also made sure she does not have the staff support she needs to do her job." (*Id.* ¶ 11.) To that end, Dean Holley sat in on Garrison's interview of a prospective receptionist, even though he allows "every person of color at her level of authority" to initiate their own hiring processes. (*Id.* ¶ 15.) He also denied Garrison the right to evaluate the employees under her supervision and refused her request to fire a "seriously deficient employee." (*Id.* ¶ 11.) When Garrison was out of the office on medical leave in 2010, Dean Holley hired support staff without consulting her. (*Id.* ¶ 11.)

Kris Krishna ("Krishna"), one of the staff members hired by Dean Holley, had a number of performance deficiencies, "including his failure to be at work during business hours, his failure to complete assigned work, and his consistent disrespect of [Garrison] as a manager." (*Id.* ¶ 12.) Dean Holley told Garrison not to document these performance issues, because the Dean did not want to fire Krishna, who is African-American. (*Id.*) In August 2010 Dean Holley approved Krishna for attendance at an out-of-state conference, indicating that "such perks should be a reward for hard-working employees." (*Id.* ¶ 13.)

3

When Garrison questioned this decision, Dean Holley responded, "If you do not wish to work for me, you have options, and I suggest you consider them." (*Id.* ¶ 13.)

According to Garrison, Dean Holley failed to hold African-American employees accountable on other occasions, as well. Charlotte Washington ("Washington"), Director of Communications, is one such employee. Garrison explains that Washington behaves unprofessionally and is often unreachable during normal school hours. On one occasion, Washington "verbally assaulted Garrison," then "stomped out of her office, screaming that she would not be talked down to." (*Id.* ¶ 14.) Though Garrison alerted Dean Holley to Washington's unprofessionalism, the Dean did not address her performance deficiencies. (*Id.*)

Disturbed by the above occurrences, Garrison raised a complaint of discrimination, after which she alleges the school "moved quickly to make [her] situation even more difficult." (*Id.* ¶ 16.) The school "moved her compensation from the law school budget to a Title III budget…that must be approved each month." (*Id.*) Garrison alleges that she is the only Dean whose compensation is handled this way, and she claims that it was an "obvious retaliatory move after she challenged discriminatory treatment." (*Id.*) Ultimately, Garrison claims that Dean Holley has given many of her duties to an African-American woman whom he pays $50,000 more per year than he was paying Garrison. (*Id.* ¶ 18.)

Since the filing of the original complaint, Dean Holley created a new position for the law school, executive director of academic assessment. (*Id.* ¶ 19.) Garrison alleges that Dean Holley did not post the position, and filled it on an interim basis with an African-American employee, Docia Rudley ("Rudley"). (*Id.*) Garrison claims that Rudley

4

failed to meet the requirements for obtaining tenure. (*Id.*) Though past practice had been that a professor who failed to make tenure was required to leave the University, Garrison claims that Dean Holley ignored this practice for Rudley. (*Id.*) Later, Dean Holley posted the position, but chose Rudley for the permanent position. (*Id.*) Garrison claims she was not considered for the position, even though she was qualified, because of her race. (*Id.*)

Garrison has filed claims for violation of Title VII of the Civil Rights Act of 1964 for race discrimination and retaliation. According to Garrison's Second Amended Complaint, she "timely filed a charge of discrimination," and "has received a right to sue letter." (*Id.* ¶ 21.) Garrison alleges lost wages as well as compensatory damages for her injuries, which include mental anguish. TSU has filed a Motion for Partial Summary Judgment on the issue of race discrimination.

## II.     LEGAL STANDARD

### A.  Summary Judgment

A court must grant summary judgment if the pleadings and evidence show that no genuine issue of material fact exists, and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. The party moving for summary judgment must demonstrate the absence of any genuine issue of material fact; however, the party need not negate the elements of the nonmovant's case. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1997). If the moving party meets this burden, the nonmoving party then must go beyond the pleadings to find specific facts showing there is a genuine issue for trial. *Id.* "A fact is material if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 326 (5th Cir. 2009) (footnote omitted) (internal quotation marks omitted).

Factual controversies should be resolved in favor of the nonmoving party. *Liquid Air Corp.*, 37 F.3d at 1075. However, "summary judgment is appropriate in *any* case 'where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant.'" *Id.* at 1076 (quoting *Armstrong v. City of Dallas*, 997 F.2d 62, 67 (5th Cir. 1993)). Importantly, "[t]he nonmovant cannot satisfy his summary judgment burden with conclusional allegations, unsubstantiated assertions, or only a scintilla of evidence." *Diaz v. Superior Energy Servs., LLC*, 341 F. App'x 26, 28 (5th Cir. 2009) (citation omitted). The Court should not, in the absence of proof, assume that the nonmoving party could or would provide the necessary facts. *Liquid Air Corp.*, 37 F.3d at 1075.

### B. Title VII

Title VII of the Civil Rights Act of 1964 makes it unlawful for an employer to discriminate against an employee based on the individual's race. Intentional discrimination can be proven by either direct or circumstantial evidence. *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 222 (5th Cir. 2000). If the Title VII claims lack direct evidence of discrimination, they will be analyzed according to the burden-shifting framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).

Under the *McDonnell* framework, the plaintiff must first establish a *prima facie* case of discrimination. *Id.* at 802. To meet this burden, the plaintiff must show 1) he is a member of a protected class, 2) he was qualified for the job, 3) he suffered an adverse employment action, and 4) others outside the protected group were treated more favorably. *Id.* If the plaintiff succeeds in making the *prima facie* case, the burden shifts to

the defendant to produce evidence of a legitimate, nondiscriminatory reason for the treatment of the plaintiff. *Id*. If the defendant offers a nondiscriminatory reason, the burden shifts back to the plaintiff to show that the employer's reason for the disparate treatment is merely a pretext for discrimination. *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 143 (2000).

## III. ANALYSIS

TSU requests partial summary judgment on Garrison's race discrimination claim, arguing that certain alleged actions do not rise to the level of adverse employment, the third element of a *prima facie* case. In its motion, TSU does not contest that these alleged actions occurred, nor does it argue that the alleged actions were not taken with discriminatory intent. TSU only argues that the alleged actions do not arise to the level of an adverse employment action. Therefore, each alleged action will be considered with respect to the adverse employment element of a *prima facie* claim. The Court is not determining the admissibility of these allegations. Furthermore, the following allegations are discussed by the Court because they have been raised by TSU. However, it does not foreclose Garrison from asserting other allegations as evidence of adverse employment actions.

### A. Adverse Employment Action

TSU argues that Garrison is unable to establish a *prima facie* case of race discrimination because she cannot show that she suffered an adverse employment action. Specifically, TSU argues that certain factual allegations cannot constitute an adverse employment action.

It is well established by the Fifth Circuit that "[a]dverse employment actions include only ultimate employment decisions such as hiring, granting leave, discharging, promoting, or compensating." *McCoy v. City of Shreveport*, 492 F.3d 551, 559 (5th Cir. 2007) (quoting *Green v. Adm'rs of Tulane Educ. Fund*, 284 F.3d 642, 657 (5th Cir. 2002)). The Fifth Circuit has also long held that demotions are adverse employment actions. *Pierce v. Texas Dep't of Criminal Justice, Institutional Div.*, 37 F.3d 1146, 1149 (5th Cir. 1994) ("Adverse employment actions are discharges, demotions, refusals to hire, refusals to promote, and reprimands."). Though the Supreme Court expanded the definition of adverse employment action in the retaliation context, *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006), the Court has not expanded the definition in the race discrimination context. *McCoy*, 492 F.3d at 559-60 (recognizing that "the Supreme Court abrogated our approach in the retaliation context . . . [but] our precedent recognizing only "ultimate employment decisions" as actionable adverse employment actions remains controlling for Title VII discrimination claims.").

Garrison alleges that Dean Holley "micromanaged every detail and refused to give her the authority she need[ed] to do her job." (2nd Amend. Compl. ¶ 9.) She also claims that she was not provided with a key to get into the law school rooms that she needed access to on weekends and holidays. (*Id.* ¶ 15.) Furthermore, Garrison claims that Dean Holley did not give her adequate staff support and refused her efforts to hire and fire employees. (*Id.* ¶ 11.) TSU argues that none of these facts arise to the level of an adverse employment action. While the Court agrees that these are not ultimate employment decisions such as hiring, discharging, promoting, demoting or compensating, it is not clear that Garrison pled these facts to allege adverse employment

8

actions. Rather, these allegations seem to be the building blocks of a case for race discrimination through circumstantial evidence.

TSU also argues that the removal of certain of Garrison's job duties and the withholding of $5,000 do not rise to the level of adverse employment actions. However, there is a genuine issue of material fact as to whether these two allegations can constitute adverse employment actions. Garrison claims that "she no longer teaches the bar essay class, she no longer has input on the faculty curriculum committee, she no longer controls the bar assistance program, and she is not even permitted to send emails directly to the faculty clarifying her employees' working arrangement . . . [and she is denied] the right to evaluate the employees under her supervision." (*Id.* ¶ 9.) TSU does not argue that Garrison no longer has these duties. Instead, TSU argues that the removal of these duties does not rise to the level of a demotion. For one, the transfer of duties did not reduce Garrison's salary or benefits. However, the Fifth Circuit has held that a demotion need not be accompanied by a reduction in salary. *Click v. Copeland*, 970 F.2d 106 (5th Cir. 1992) (holding that the transfers of two deputy sheriffs from the law enforcement division to positions as jail guards could be considered demotions, even though the transfers were not accompanied by reductions in salary.) A demotion can simply be a new role that is objectively worse, such as being less prestigious or less interesting or providing less room for advancement. *Alvarado v. Texas Rangers*, 492 F.3d 605 (5th Cir. 2007). The job duties that Garrison alleges she lost are not insubstantial, and in total they could amount to a demotion. This is a genuine issue of material fact that should be left to a jury.

Garrison also alleges that she was not paid $5,000 for teaching a bar essay course, which was a portion of her compensation. Garrison claims that she was paid this amount in previous years for teaching the bar essay course and that other deans who taught the course also received extra compensation. On the other hand, Defendant claims that the $5,000 is paid at the discretion of the dean, in this case Dean Holley, as a bonus. Based on the alleged facts, it is unclear whether the $5,000 is part of a salary or a bonus. If the $5,000 is part of Garrison's salary, then the withholding of that amount would be an issue of compensation, which is a recognized adverse employment action. *McCoy*, 492 F.3d at 559. However, if the $5,000 is instead a bonus, then it is possible that the withholding of that amount does not arise to the level of an adverse employment action.[1] Garrison raises a genuine issue of material fact as to whether the $5,000 was a bonus or a portion of Garrison's compensation.

### B. Pretext

TSU further argues that the Court should grant summary judgment on the issue of race discrimination because Garrison cannot show that TSU's nondiscriminatory reasons are merely pretext for discrimination. If a plaintiff succeeds in making the *prima facie* case, the burden shifts to the defendant to produce evidence of a legitimate, nondiscriminatory reason for the treatment of the plaintiff. *McDonnell*, 411 U.S. at 802. TSU argues that it did not give Garrison the $5,000 for teaching a bar review course because this duty was already in her job description, and it did not warrant additional pay.

---

[1] Defendant cites other district courts within the Fifth Circuit for this assertion. *See Turner v. DynMcDermott Petroleum Operations Co.*, 2010 WL 4363403, at *3 (E.D. La. 2010) (*citing Tyler v. Ispat Inland, Inc.*, 245 F.3d 969, 972 (7th Cir. 2001) ("The denial of a monetary perk, such as a bonus or reimbursement of certain expenses, does not constitute an adverse employment action if it is wholly within the employer's discretion to grant or deny and is not a component of the employee's salary."); *see also McCullar v. Methodist Hosp. of Dall.*, 2012 WL 760074, at *7 (N.D. Tex. March 8, 2012).

Again, there is a genuine issue of material fact whether the $5,000 was at the discretion of the dean to pay or whether it was a part of Garrison's compensation. For purposes of determining whether Garrison can show pretext, the Court assumes that Defendant has offered a nondiscriminatory reason.

Once the defendant offers a nondiscriminatory reason, the burden shifts back to the plaintiff to show that the employer's reason for the disparate treatment is merely a pretext for discrimination. *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 143 (2000). A plaintiff may raise a fact issue as to pretext either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or "unworthy of credence." *Id.* at 143. An explanation is false or unworthy of credence if it is not the real reason for the adverse employment action. *See Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 899 (5th Cir. 2002). Evidence demonstrating that the employer's explanation is false or unworthy of credence, taken together with the plaintiff's *prima facie case*, is likely to support an inference of discrimination even without further evidence of defendant's true motive. *Id.* at 897; *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 223 (5th Cir. 2002). No further evidence of discriminatory animus is required because "once the employer's justification has been eliminated, discrimination may well be the most likely alternative explanation." *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 147-48 (2000).

Garrison alleges that similarly situated individuals of color were treated more favorably than she in the award of compensation. Specifically, she claims other individuals of color were, unlike her, paid $5,000 for teaching the bar essay course. The Fifth Circuit has stated that pretext can be shown if other similarly situated individuals

11

were treated differently. *See Ramirez v. Landry's Seafood*, 280 F.3d 576, 577-78 (5th Cir. 2002). TSU argues that the comparators Garrison uses are not similarly situated. Two of the comparators, Sally Green ("Green") and Ana Otero ("Otero"), are professors and not administrators like Garrison. The Court agrees that Green and Otero have a different job title and job description than Garrison. However, it is not clear to the Court that different rules applied to professors and administrators regarding compensation for teaching the same bar essay course. This is an issue of fact to be determined by a jury. Garrison also lists Virgie Mouton ("Mouton") and Danyahel Norris ("Norris"), both administrators, as comparators. Based on job titles, Mouton and Norris seem to be similarly situated. Still, TSU claims that Mouton is not a proper comparator because she has more experience than Garrison. However, Garrison does not contend that their base salaries should be the same, but only that they should both be paid extra compensation for teaching the same course. Therefore, Garrison raises an issue of fact as to whether there was disparate pay for teaching the bar review course. A jury could conclude that TSU's reason for withholding the $5,000 is unworthy of credence. In light of the evidence Garrison presents, a jury could infer that TSU withheld the $5,000 based on her race. Therefore, TSU's motion for partial summary judgment must be denied.

## IV.  CONCLUSION

For the reasons explained above, Defendant's Motion for Partial Summary Judgment (Doc. No. 32) is **DENIED**.

**IT IS SO ORDERED**.

**SIGNED** this 23rd day of October, 2012.

_____
KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE